U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2019 JAN 30  PM 2: 49

CLERK

BY _____
        DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

SHAUN P. GOLDEN,

           Plaintiff,

v.

HERMITAGE INN REAL ESTATE
HOLDING COMPANY, LLC and
JAMES R. BARNES,

           Defendants.

Docket No.: 2:19-cv-18-cr

## COMPLAINT

Plaintiff, Shaun P. Golden, by and through his undersigned counsel, files this complaint against Defendants Hermitage Inn Real Estate Holding Company, LLC and James R. Barnes, and states as follows:

### PARTIES AND JURISDICTION

1. Plaintiff Shaun P. Golden ("Plaintiff" or "Golden") is an individual residing in Suffolk County, New York.

2. Upon information and belief, Defendant James R. Barnes ("Barnes") is an individual residing in or around Avon, Connecticut.

3. Upon information and belief, Barnes is and/or was at all times relevant to this action, the Managing Member and sole member of Defendant Hermitage Inn Real Estate Holding Company, LLC, a Connecticut limited liability company ("Hermitage Holding Co.", and collectively with Barnes, "Defendants").

4. Hermitage Holding Co. is a real estate holding company that owns the Hermitage Club, LLC at Haystack Mountain in Wilmington, Vermont, a 1400 acre private residential

1

community which offers private ski access, a golf community and the benefits of membership in an exclusive club.

5. Upon information and belief, Barnes is and/or was at all times relevant to this action, the President and Chief Executive Officer of the Club.

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a). Each party is a citizen of different states, and the amount in controversy exceeds $75,000.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred in this district and the Mountain is in this district.

## GENERAL ALLEGATIONS

8. In or about 2011, Barnes, through Hermitage Holding Co., purchased a large, existing ski facility at Haystack Mountain in southern Vermont.

9. Following his purchase, Barnes began an extensive plan for new construction, renovation and improvement of the ski facilities, ancillary structures, and services. Barnes's plan was to develop a high-end, private ski club (the "Hermitage Club"), which could include affiliated inns, a lodge, and golf course, as well as private homes, whose owners would be required members of the club.

10. Plaintiff is the founder and sole member of Golden Wealth Properties, LLC ("Golden Properties").

11. In or about May, 2017, Plaintiff began discussions with Barnes regarding the possible purchase of five of the Hermitage residential real estate lots.

12. In Plaintiff and Barnes's discussions, Barnes, acting on behalf of Hermitage Holding Co., made extensive and detailed representations to Plaintiff as to the nature of the club's amenities and the status of the renovations.

13. Among Barnes's representations, Barnes provided Plaintiff with marketing materials that described the Hermitage Club's ski and other amenities, including "best-in-class snowmaking" and "state-of-the-art lifts," as well as an 18-hole golf course for use during the warmer months.

14. Barnes's materials also included a map of the available ski trails, descriptions of the Hermitage clubhouse and ancillary facilities, and details related to the various additional membership benefits.

15. Of the club's improvements, including the crucial ski lifts and snow-making machinery, Barnes made representations to Plaintiff that such improvements were being installed as planned and on schedule. Barnes also made representations that the Hermitage Club's growth was robust and strong.

16. These lots, upon each of which Plaintiff, through Golden Properties, would construct a single family home, were to include a "Deedable Admission Right" to the Hermitage Club. This Deedable Admission Right was to provide the owner of the property with an expedited membership to the Hermitage Club, bypassing any waitlist, with such membership providing unlimited access to the Hermitage Club's amenities.

17. Membership in the club through the Deedable Admission Right was the key feature of the properties and the basis for their profitability once construction had been completed and the properties had been sold to third-parties.

18. Relying on Barnes's representations with respect to the Hermitage Club, Plaintiff entered into a real estate purchase and sales agreement with the Hermitage Holding Co. for the purchase of five separate residential lots, identified as Stags Leap Lot Numbers 19, 22, 25, 27, and 29 ("Lot #", and collectively the "Golden Lots"), for the sum of $2,625,000.

19. Plaintiff's real estate purchase and sale agreement was negotiated and signed by Barnes on behalf of Hermitage Holding Co.

20. On June 27, 2017, Plaintiff and Hermitage Holding Co. closed on the purchase and sale agreement, with Plaintiff receiving a warranty deed for each of the Golden Lots.

21. Following the parties' closing, it became clear that the Hermitage Club and the Hermitage Holding Co. were under enormous financial difficulty.

22. Among their issues, the Hermitage Club and Hermitage Holding Co. owed over $214,000 in property taxes to the town of Wilmington, Vermont. Barnes's entities also owed property taxes to the town of Dover, Vermont, and they defaulted in their obligations to numerous contractors working on the construction and renovations. Even the utility bills for Hermitage Club related properties were severely past due in the amount of $65,000 owed to local utility Green Mountain Power Company.

23. In an attempt to keep the Hermitage Club afloat, Barnes obtained short term financing from RCN Capital Funding, LLC, a hard money lender. Barnes also imposed a $10,000 "special assessment" on Hermitage Club members, the possibility of which was never discussed with Plaintiff. An additional attempt for a second "special assessment" just a few months after the first assessment was overwhelmingly rejected and opposed by club members and the club closed for good shortly thereafter.

24. Thereafter, Barnes and Hermitage Holding Co. defaulted on their primary financing, $17.1 million in loans they had obtained from Berkshire Bank. Moreover, the Vermont Department of Taxes issued notice to the club prohibiting any and all club related properties from operating and conducting any business as a result of more than $1 million in back taxes uncollected for rooms, meals and sales.

25. With the collapse of the Hermitage Club, the Deedable Admission Right became essentially worthless, destroying the value of the Golden Lots.

## COUNT 1: FRAUDULENT MISREPRESENTATION

26. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 25 above.

27. Upon information and belief, Barnes, acting on behalf of Hermitage Holding Co., purposefully misrepresented material facts concerning the status of the Hermitage Club's renovations, improvements, membership, and stability.

28. Upon information and belief, Barnes knew all or part of these statements to be false when the statements were made to Plaintiff. Specifically, Barnes knew that the Hermitage Club was failing financially and that it would not be able to pay for the planned renovations and improvements.

29. Plaintiff, however, reasonably relied on Barnes's representations when agreeing to the purchase of the Golden Lots.

30. Barnes was motivated to misrepresent these material facts in order to obtain additional funds from Plaintiff through his purchase of what would soon be significantly devalued assets

31. The false representations made by Barnes about the status of the Hermitage Club renovations, improvements, and overall status were material to Plaintiff's entering into the purchase agreement and closing on the sale of the properties.

32. As a direct and proximate result of the Barnes's misrepresentations, Plaintiff has suffered significant damages in an amount to be proven at trial, but in no event less than $2,650,000.

## COUNT 2: FRAUDULENT CONCEALMENT

33. Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 32 above.

34. The financial instability and looming default by the Hermitage Club and Hermitage Holding Co. was known or should have been known to Barnes or those acting under Barnes's control.

35. Barnes had a duty to bring such information regarding the status of the club to Plaintiff's attention.

36. Instead of bringing the club's instability to Plaintiff's attention, Barnes, acting on behalf of Hermitage Holding Co., willfully and repeatedly concealed these facts and gave Plaintiff false information to the contrary.

37. Barnes knowingly failed to make such disclosures in order to solicit the purchase funds from Plaintiff.

38. If Plaintiff had been aware of the club's financial and overall difficulty, he would not have agreed to the purchase of the Golden Lots.

39. Barnes's concealment of these material facts has caused and is causing significant damage to Plaintiff in an amount to be determined at trial, but in no event less than $2,650,000.

## COUNT 3: FRAUDULENT INDUCEMENT

40. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 39 above.

41. Barnes, acting on behalf of Hermitage Holding Co., fraudulently induced Plaintiff to enter into the purchase and sales agreement and to close on the agreement for the purchase of the Golden Lots by providing express and/or implied assurances that the Hermitage Club's renovation and expansion was proceeding normally.

42. Barnes misrepresented and concealed material facts relating to the status and overall financial difficulty of the Hermitage Club.

43. Barnes knew or should have known about the Hermitage Club's financial difficulty.

44. Plaintiff relied on Barnes as Hermitage's principal and agent to bring these facts to Plaintiff's attention.

45. Plaintiff could not have reasonably known about or discovered that the Hermitage Club was near collapse because Barnes, and/or those acting under Barnes's control, knowingly concealed those facts from Plaintiff.

46. The facts concerning the status of the Hermitage Club were material to Plaintiff's decision to purchase the Golden Lots.

47. Plaintiff has been significantly damaged by Barnes's fraudulent actions in an amount to be determined at trial, but in no event less than $2,650,000.

48. Because Barnes fraudulently induced Plaintiff to advance funds, Plaintiff is entitled to have such funds returned.

## COUNT 4: NEGLIGENT MISREPRESENTATION

49. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 48 above.

50. Barnes, acting on behalf of Hermitage Holding Co., supplied false information to Plaintiff regarding the status of the Hermitage Club, its renovations, and its overall financial stability.

51. Barnes supplied information regarding the status of the Hermitage Club with the expectation that Plaintiff would rely on such information.

52. Hermitage's representatives, including, but not limited to Barnes, failed to exercise reasonable care in obtaining and communicating accurate information regarding the status of the club and its renovations, and either knew or should have known that the information provided to Plaintiff was false and that Plaintiff was relying on such information to his detriment.

53. As a direct and proximate result of Barnes's negligent misrepresentations, Plaintiff has suffered significant damages in an amount to be proven at trial, but in no event less than $2,650,000.

## COUNT 5: UNJUST ENRICHMENT

54. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 53 above.

55. Plaintiff agreed to the purchase of the Golden Lots in reliance on Barnes's representations as to the status of the club and its renovations.

56. Despite Plaintiff's justified reliance, the Hermitage Club, Hermitage Holding Co. and Barnes failed to complete the promised improvements, and instead defaulted on their obligations to creditors.

57. In light of the totality of the circumstances, and Barnes's wrongful conduct as set forth in this Complaint, Barnes's receipt and retention of funds advanced by Plaintiff, personally or through Hermitage Holding Co., constitutes unjust enrichment.

58. In light of the totality of the circumstances, to allow Barnes to retain funds received from Plaintiff for the purchase of the Golden Lots constitutes unjust enrichment.

59. Plaintiff has been significantly damaged by Defendants' unjust actions in amount to be determined at trial, but in no event less than $2,650,000.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, Plaintiff respectfully requests that this Court:

  i. Enter judgment in Plaintiff's favor and against Defendants on all claims raised;

  ii. Award Plaintiff his costs associated with this action; and

  iii. Grant such other relief as it deems just and necessary.

Dated: January 30, 2019

FACEY GOSS & McPHEE P.C.

Shannon A. Bertrand
71 Allen Street, Suite 401
Post Office Box 578
Rutland, VT 05702-0578
802-665-2680
bertrand@fgmvt.com

LAZER, APTHEKER, ROSELLA
& YEDID, P.C.

*Eric J. Horbey*
Eric J. Horbey
515 N. Flagler Drive, Suite 400
West Palm Beach, FL 33467
Tel: (561) 899-0225
Fax: (561) 899-0125
Email: horbey@larypc.com
*Pro Hac Vice (Application Pending)*